Our first case this morning is CLOER v. Health and Human Services. After CLOER, we'll take a brief intermission and then we'll return to the other two cases this morning. Mr. Fishman. May it please the Court, Counsel, Robert Fishman on behalf of the Petitioner Appellant Melissa CLOER. One of the grounds we relied upon in support of our motion requesting oral argument was the fact that the Secretary had raised a number of arguments in her supplemental en banc reply brief for the first time. And so if I might, I'd like to begin by addressing very quickly the two most significant of those arguments. The first one being the claim, this is repeated throughout the reply brief, that Dr. CLOER should reasonably have known of the causal connection between the hep B vaccine and MS from the very outset. And again, it's repeated a number of times in the reply brief. The basis for that claim, it appears at page 8 in the reply, it is a Institute of Medicine report published in 1994. There's two things I want to say about this. The first is that that report is not evidence in this case. In fact, the government did not present any evidence at all in this case concerning the question of when the medical community understood the link between the vaccine and multiple sclerosis. They never even contested the issue. So I think you have an obvious evidentiary problem with relying on the 1994 report. I think that you also have a waiver argument based on the well-worn rule that arguments raised for the first time in a reply are generally not considered by appellate courts. I think you also have an estoppel problem with this claim because the secretary has maintained throughout, including most recently in their supplemental en banc reply brief to this court, that there is in fact no connection at all between the vaccine and multiple sclerosis. So to now do an about face in a reply brief and contend that actually there is a connection and it was established 17 years ago, I think creates an estoppel problem. Finally, if you look at the 1994 report, and I'll confess I have not, I'm an appellate lawyer, I look at records. It's not a part of the record. But I've looked at the parenthetical that the secretary includes to characterize what that report says, and it doesn't establish a connection. It says there's inadequate evidence to establish a connection. So even if this court were to consider the evidence, and I use that term loosely, it doesn't support the claim that my client should have known about this as long ago as 1996. The other argument that's been raised for the first time in the reply brief is the claim that, excuse me, that there's nothing, this arises in the context of equitable estoppel. It really applies to all the claims, and that is the argument that there's nothing, there's no extraordinary circumstance in this case in the sense that the contention is the statute of limitations begins to run before anyone in the medical community understands the relationship between this vaccine and MS. Nothing unusual about that because that's the circumstance with all non-table injuries. That also is a claim that's repeated a number of times, utterly unsubstantiated. There's no citation to any authority in the secretary's brief to support that notion that this is how the Vaccine Act works. I'm not a Vaccine Act lawyer. If we were to apply a discovery rule here, there wouldn't need to be a consensus in the medical community for the statute of limitations to begin running, correct? I agree. There would only need to be some reason to believe that there was a causation. Some objective recognition, correct. And I think that when parties or judges start adding the notion of consensus into that, you raise the bar a great deal. It goes to another point made by the secretary for the first time in the reply brief, which is to adopt a discovery rule would essentially negate the savings statute of limitations, the one that kicks in when a new injury is added to the vaccine table, renders it meaningless. It is the panel dissents argument that there is no statute of limitations in non-table cases if you have a discovery rule. The assumptions be it, it's twofold, that it requires almost universal acceptance of a connection, number one, which I agree I think is incorrect. The other assumption that underlies that claim is that when you do have a consensus, when there is a recognition, boom, it shows up on the injury table. And that's also not correct. Are you giving up the consensus argument you made in your original briefs and in the original argument? I understood. No. The argument is not what I'm saying is our contention based on Markovits is you need an objective recognition in the medical community at large. But not a consensus. Which is not a consensus. It's not universal acceptance. But consensus was the basis of your original position. I don't believe we ever used the term consensus. We were relying on the language of Markovits, which also does not use the term consensus. So the argument we are making, we're sticking to, our argument doesn't go so far as to require consensus, universal recognition, other things like that. What are we to make of the provisions of the Vaccine Act with respect to the contents of the petition, which seems to be different than the notice pleading that you usually have in the district court? The statute says that there has to be an affidavit and supporting documentation demonstrating causation. And the legislative history of that suggests that there has to be an affirmative demonstration in the petition of causation. Does that suggest that you can't file a petition without having some recognition in the medical community of causation? Well, I think it certainly does. And it's the basis for our argument that steps away a little bit from the nuances and technicalities of discovery and Supreme Court precedent and equitable tolling. And asks, how can you bring one of these claims when nobody knows that there's any connection between a vaccine and an injury? One, just as a matter of common sense. Two, as a matter of procedure for the very reason Your Honor points to. But counsel, you suggest that there should be a discovery rule. Isn't there already a discovery rule in the statute? Congress could have chose to start the tolling, as in most courts, from the date of injury. But they didn't. Instead, they said from the first symptom of injury, which can, of course, be long after the injury in some cases. So why isn't that, in and of itself, Congress's chosen discovery rule that we shouldn't supplant? The short answer to that is yes, Congress included a discovery rule in the statute of limitations. I would disagree with Your Honor that the discovery rule is limited, however, to first symptom as opposed to injury. You have, somewhat unusually, in a statute of limitations provision, language referencing a vaccine-related injury, quote, unquote, which occurs as the result of the administration of a vaccine. And I think when Congress says statute of limitations is triggered by an injury that results from the occurrence of the administration of a vaccine, it's a somewhat inartful way of saying an injury that's caused by the administration of a vaccine. And so the discovery rule, we argue, that Congress did, in fact, adopt is your traditional discovery rule. Not in the sense of injury, because you're certainly correct, it's symptom or manifestation. But the same in terms of symptom and manifestation, the typical injury component. And then, as well, causation. The occurrence occurred as a result of the administration. I'm not sure I understand that. You're saying that the word injury itself assumes causation, has inherently the word caused in it? No, not at all. I think that if Congress had just used the word injury or just used the word claim, we'd have a much more difficult plain language argument. But they didn't just use the word injury and they didn't use the word claim. They said an injury-related, a vaccine-related injury. I'm sorry, vaccine-related injury that occurs as a result of the administration of a vaccine. So you get this from the statute itself that says a symptom or manifestation of onset or the significant aggravation of such an injury, such injury. The such injury referring back to the vaccine-related injury. Is that your position? My position is that Section 16A.2 says, for vaccines added to the table after 1998, if a vaccine-related injury occurred as a result of the administration of such vaccine, no petition may be filed, etc., etc., until 36 months after the date of the occurrence of the first symptom or onset or significant aggravation of such injury. Of such injury. The such injury. Referring back to the vaccine-related injury. Right. What about the definitional section of the statute that actually defines vaccine-related injury? It doesn't define it in terms of causation, does it? The language that occurs as a result of, when you start talking about things that occur as a result of something else. Well, the definitional section of the statute refers to, it says that vaccine-related injury or death means an illness, injury, condition, or death associated with one or more of the vaccines. Are you saying associated with is a synonym for causation? I think the definitional, no, I don't think so. And so the question is, well, all right, we have the definition. We have a clear requirement for causation in the petition, the substantive aspect. Why is Congress talking about things that occur as the result of the administration of a vaccine in the statute of limitations? Why are they included as a result of in the statute of limitations? And our position is that is longhand for causation, and it's in the statute of limitations. You need to do something with that. Mr. Fishman, if under your view you have to wait until there's objective agreement, doesn't that defer the beginning of the statute almost indefinitely in the case of many, many diseases? 10, 20 years, and that's quite contrary to philosophy of the law, which attempts to put an end to litigation. It's a good question, and it's a difficult question to answer because there's nothing in the record in this case that really quantifies that concern. How often does this happen? How regularly does the medical profession… But how long has it taken to discover the causes of cancer? Right. Alzheimer's disease. Right. However, I do think, and I can really provide the court with just a little bit more than anecdotal evidence to support this claim, I think it's a concern that is going to be actualized very, very rarely. Because my understanding is most all claims brought under the Vaccine Act already have and have had for a long time associated illnesses with them. And so this concern that the floodgates will open and there'll be all sorts of newly discovered connections and medical recognition does not seem to be a particularly realistic one. But whether or not it's realistic, how could it be that Congress would intend that the running of the statute of limitations would run for claims under the Vaccine Act when in the vast majority of states there's a discovery rule? You have the right to go sue under state law if your vaccine petition fails. So why would there be a different statute of limitations for the federal vaccine claim and a state vaccine claim? It's an excellent question. And I don't think there's a satisfactory answer to that. And I would add that I think that's even truer now in light of the Supreme Court's decision in Brucewitz, which says basically this is the only chance you have to recover the Vaccine Act. What everybody, including many members of this court, had thought previously, you don't like the result in a vaccine case, reject it and go to state court, invoke state discovery rules. That door is closed in virtually all vaccine cases. Well, I don't know if you had a chance to look at the many states that do have these discovery rules that Judge Dyke was referring to. But I did have occasion to look at those statutes. And almost all of them turn on date of injury, unlike the statute we have in front of us, which turns on the date of the manifestation of the first symptom.  In the states, you need a discovery rule because the injury may be unknown. Whereas here you don't need a discovery rule because your statute of limitations doesn't start ticking until you have a manifestation of a symptom. Right. So two answers to that. Number one is, again, the typical discovery rule, injury and cause. And you're absolutely right. Congress has tweaked the injury component of the traditional discovery rule in the Vaccine Act. I don't think that it follows necessarily from that fact that they intended that it intended to do away with the causation aspect of the typical discovery rule, particularly given the language of the statute of limitations that references discovery. So I agree this is not an ordinary injury rule, but it doesn't answer the question of whether that should relieve somebody of the need to understand the cause of their symptom. And I think the explanation as to why Congress did what they did is provided for different purposes, but is provided by the Secretary's brief, which says they point to two injuries that somebody can have a disease they can have as a result of a vaccine for years and years before anybody in the world would understand that they had contracted this disease. And in that circumstance, it would be unfair for the statute of limitations to run before there's an eye blinking episode or a seizure or what have you. That is, I think, a rational explanation for why Congress did what it did, but it doesn't follow from that. That as soon as your eye blinks, you better file a claim under the Vaccine Act because the statute is running, even though you have absolutely no basis to think that this injury or this blinking episode has anything to do with the vaccine. It doesn't speak to that. But Mr. Fishman, wouldn't that be resolved essentially by tolling the statute, an equitable tolling of the statute of limitations? Sure. I mean, courts resolve cases like this in the first instance based on statutory language. I think my clients should prevail based on the statutory language. If you disagree with that, then certainly we get into equitable tolling and that clearly would solve the problem. And it would also account for considerations. You know, maybe if the acknowledgment comes 30 years down the line, 30 years as opposed to 18 months, that's going to be something that will counsel against equitable tolling. So, yeah, sure. It's setting aside equitable tolling for the moment. You've argued, as I understand it, that the discovery rule is in effect embodied in the statute already in the form of the language vaccine-related injury. Now, if we should reject the argument as a matter of statutory construction that the term vaccine-related injury carries with it the component of causation, i.e. knowledge of actual causation before the statute of limitation is triggered, do you think there is still yet another background discovery rule that would apply, a sort of common law discovery rule against which the statute should be read? I do. Or do you think this is purely a statutory discovery rule? Frankly, I think the best argument is plain language of the statute. Okay. It's not dispositive of the discovery rule because, of course, you have cases like Kubrick that just say accrual. It doesn't say anything about injury, causation, or anything. And the Supreme Court says, well, given the state of the law at the time of enactment, and given that there's nothing inconsistent in the statutory language to prevent us from implying a discovery rule, which, as the Supreme Court has noted, is the usual practice in the federal circuits, then we can do so. The trouble, and you've alluded to it, is that this statute does not contain the concept of accrual, or at least the terminology. And so all the cases that deal with accrual construction seem to me not to be necessarily invoked here. Not necessarily. But if you look at circuit precedent, and I don't think we cited it, I'll be honest, and I apologize for that. The statute of limitations that federal circuits often and routinely imply a discovery rule into don't always speak in terms of accrual. 36 years from the date of injury, or the claim. It's different language all the time. But I don't think Kubrick turns on the word accrual. If it did, cases like TRW and Rotella would say, that word's not in these statutes. End of story. But they didn't. They didn't go through and do the sort of analysis that Your Honor is suggesting might be appropriate in this case, if the plain language argument is rejected. You mentioned Rotella. Isn't that against your position? It's not a vaccine case. It's a malpractice case. But the statements of the Supreme Court would seem to work against you. A person suffering from inadequate treatment is thus responsible for determining within the limitations period then running whether the inadequacy was malpractice. That's analogous to the causation requirement on the vaccine. The statute at issue in Rotella was RICO, and the question there was whether the pattern of racketeering activity requirement of a RICO claim had to be known as part of the statute of limitations. And the Supreme Court rejected that for all sorts of reasons that turn on the peculiarities of RICO and the very long periods of time that patterns would go. Doesn't it relate to whether the so-called injury was malpractice? Does it relate to that? I don't think so. And again, it's a RICO case. It turns on pattern of racketeering. And in this case, we're not arguing the question of knowing when your Honor talks about malpractice, somebody knowing that conduct not only was caused by a doctor, for example, but that the doctor's conduct constitutes malpractice. It's not a consideration in the Vaccine Act case, and we're not arguing anything beyond a recognition of a causal relationship. And there is no question as to malpractice here. Kubrick distinguishes, doesn't it, between the need under a discovery rule to know of the causation, but the court said you don't need to know of a malpractice. Right. There's a difference between knowing the facts underlying your claim and their legal significance, I think, is the way the court frames that question. And we don't need and we're not asking the court to go the second step. We're just saying you need to know that you've suffered a vaccine-related injury. Otherwise, why would you come to the Federal Court of Claims? Why would you file a petition with a special master? Well, there isn't a second step because it's a no-fault system. Right. Mr. Fishman, do you wish to retain any of your cuddle time? I would. Thank you. Ms. DeScutta? May it please the Court, Anisha DeScutta for the Secretary. So I think where we start out here is in construing the plain language of the limitations period. It seems that the parties are in agreement at this point that the question before the court is how to interpret the statute of limitations that Congress crafted for the Vaccine Act. Do we start with the Kubrick presumption that a discovery rule applies here because this is similar to malpractice? We do not, Your Honor. So in Kubrick and in the analogous state cases that opposing counsel and amicus invoked, those involved situations where there was either no limitations provision or a very bare-bones limitation provision that referred to claim accrual but to none of the other attendant circumstances. Suppose here that, put aside the language of the statute, and I understand your argument about the language of the statute and we'll get to that. But apart from the language of the statute, is this an area in which the Kubrick presumption applies and that presumption has to be overcome by language or structure of the statute? Your Honor, I don't understand Kubrick to set up any presumption that a medical malpractice rule would apply in a particular setting or another. And certainly this scheme is very different from the type of FTCA scheme that was under consideration in Kubrick. So even setting aside the language of the limitations provision, there are other aspects of this scheme that cut against the type of discovery rule that petitioner is arguing for in this case. But so are you saying that we have to find that the language and structure of the statute cut against a discovery rule to eliminate the Kubrick presumption? Or is there some other reason the presumption doesn't apply? Well, Your Honor, Kubrick, in the government's view, doesn't set up a presumption. There's obviously the background issue of whether this statute is a waiver of sovereign immunity and therefore needs to be construed narrowly. But leaving even that aside, the Supreme Court has made very clear that the analysis does focus on the text and structure of the statute. So were this a statute where there were no limitations provision and no countervailing structures, then perhaps this court would be in the position of considering as a matter of policy what the rules should be. But here Congress has spoken and expressed its intent that a particular kind of discovery rule should apply in this scheme and has supplemented that with certain provisions that will only work properly according to the discovery rule that Congress has inserted into the statute. So do I understand that the Secretary's position is that if, during the period of limitations, the consequence has not been subject to diagnosis because it's due to the nature of the disease, that such petitioners are excluded from access to the remedies under the Vaccine Act? If the first symptom or manifestation has occurred but the condition has not been definitively diagnosed... More definitively, that is, is a question of fact as to how close is the relationship between the symptoms which occurred and the ultimate diagnosis after the statute had run, in which case there are factual questions, rather, which would weigh towards equitable estoppel, I should think. Well, I believe there are two different scenarios encompassed within Your Honor's question. So one is a situation in which the first symptom or manifestation occurs, but there's no reason to suspect a vaccine injury link or no condition has been diagnosed. Could it be that the first symptoms here could have been an indication of any of a dozen or no consequences? Well, Your Honor, there's no factual dispute here that the first symptom was the electric shock sensation that occurred one month after. I think the silence speaks for itself. I think the Secretary has never argued that she should have known with the first symptoms that multiple sclerosis was what was going to happen. Certainly it is not a subjective standard. That's correct, Your Honor. It's not whether the petitioner would have known. But in this case, the first symptom was an unmistakable symptom of multiple sclerosis. And within the year, the petitioner was diagnosed with an unspecified demyelinating condition, and among the conditions named by her doctor that it could be were multiple sclerosis. But that wouldn't have entitled her to bring suit, right? Under the statute, she has to have some evidence of causation. And the statute seems to specifically contemplate that the petition itself has to marshal some evidence of causation, no? No, Your Honor. And in fact, this court recently in the Brockleshane case recognized that there may be situations where a petitioner is able to plead with specificity the existence of the vaccine, the existence of the symptom, and the existence of an injury. And although the nature of the injury is not yet known at that time, it could be a number of different conditions, this court has permitted petitioners to proceed on that basis. And it's concluded that under those circumstances, as in the Brockleshane case, the petitioner named a number of different injuries, and the fact-finding procedure involved in part determining what injury the evidence best supported. But you have to have some evidence of causation, right? The statute says specifically that you have to have an affidavit and evidence of causation, right, to bring suit. The statute certainly contemplates that a petitioner should have a reasonable good faith basis before filing the petition. But the statutory language in both the provision that authorizes the bringing of claims and the limitations provision, the language vaccine-related injury, Congress uses that throughout the statute and in a way that indicates that it doesn't encompass a notion of causation. So, for example... Well, Ms. Degupta, the statute does talk about the symptom or manifestation of injury, but it says such injury, which refers back to this point I raised earlier. It refers back to the language earlier in the statute, the statute of limitations. Vaccine-related injury occurred as a result of the administration of such vaccine. Isn't that a form of discovery rule built into the statute? No, Your Honor, that language just refers to the precondition for bringing the suit. So the language vaccine-related injury, into which petitioner is reading causation, is something that appears in the claim authorizing provision, 300A11, and that's clearly at the stage before any causation has been shown since causation is the ultimate merits question. It also significantly appears in 300AA15, which is the provision that discusses compensation and attorney's fees under the statute. And what's functioned there is to say that if compensation can be awarded for vaccine-related injury or death, but in subsection E, the attorney's fees section, it notes, again, using the language such a petition, referring back to this vaccine-related injury or death, that attorney's fees are available even if the petitioner has not shown causation in fact. So that the standard under the statute is that if the petitioner was brought in good faith and there was a reasonable basis, the petitioner can recover attorney's fees. So the vaccine-related injury language, aside from being defined in the statute, is used in multiple places in the statute in a way that specifically do not contemplate causation, either because it's at a stage of the proceeding where causation hasn't been shown, or, in fact, at a stage of the proceeding where causation has sort of definitively been rejected. So... If I can... I'm sorry, will you finish? No, Your Honor, please. Let me go back to the question of your exchange with Judge Newman. I want to make sure I understand what your position is with respect to the language first symptom or manifestation of onset. Is that first symptom a symptom which would be recognized at the time as indicative or plainly indicative of the particular disease, or is it a symptom which, following a diagnosis much later, one might look back and say, ah, there's your first symptom? An example, in the MS settings, there are some much more subtle symptoms that can occur early on in the process, which a doctor later upon diagnosis could look back and say, that's probably when you had the first indications, but contemporaneously the doctor wouldn't identify that symptom as indicative of MS. Which is your position? It's that hindsight is acceptable in this case, not something that this Court recognized in Markovitch. Well, it's unacceptable. In other words, you say that first symptom occurs if I have a soreness in my shoulder, and three years later I'm diagnosed with MS, that that was the first symptom even though no doctor on the face of the earth would say, if I went in with the sore shoulder, you have likely, possible, probable MS. That's my first symptom? Well, if it is a sign that would be objectively recognizable, so it doesn't have to be that it's objectively recognized at the time. And the reason why that has to be the case, Your Honor, is because the statute sets up two categories of claims, off-table claims and table claims, and very often what will happen is it won't be clear at the beginning of a proceeding whether a petitioner's claim is a table or off-table claim. So a petitioner may allege an injury that's listed on the Vaccine Act injury table and proceed through, and it's only at the fact-finding stage where the question of what was the first symptom and when did that manifest, and depending on what the determination is then, it may take on the character of a table or off-table claim. So that's part of the reason why the limitations period has to be the same regardless of what the weight of the medical evidence is on the vaccine injury link. But it goes to Your Honor's question about hindsight. So in the actual fact-finding proceedings under the Vaccine Act, what will happen is that both sides will produce experts who will testify as to what the petitioner's symptoms were and when they manifested, and that's the sort of determination of what the symptom was. So the language, the statutory language for symptom or manifestation contemplates that it has to be something that is objectively observable, but it does not contemplate that it has to have been observed or recognized at the time, meaning as in this case, once the petitioner was diagnosed with MS, it's very clear that that electric shock sensation one month after her hep B vaccine was her first symptom. Well, but Lermont's sign is a pretty definitive indication, at least it certainly would alert any physician, that that was a sign of MS, but a soreness or tiredness that would not. But your position, I want to make sure that I have this clearly, because this may end up being important, is that the symptom of tiredness or something that would not be recognized at the time no physician would identify or associate with MS would be enough to be the first symptom under the statute. Correct? Is that your position? When Your Honor says that no physician would recognize at the time, I think the issue is whether it's a clear symptom. So it could be that no physician did recognize it at the time. No, I'm talking about whether it's recognizable at the time as a symptom. Now, the fact that a particular physician doesn't recognize it, obviously that doesn't matter, but would it be recognizable at the time as a likely indicator of that disease? Is that required or not? I was understanding your answer to be no. So this seems to go to the after-acquired evidence issue, perhaps that Congress spoke to in the claim revival provision. So if we have a situation where there is something that is a definite symptom that's only recognized to be a symptom, say, several years later. So, for example, in this case, Lermit syndrome is a definite symptom of MS. But say at the time no one had yet known that Lermit syndrome had anything to do with MS. But by the time that Petitioner was diagnosed, medical science recognized that Lermit syndrome was in fact a symptom of MS. And at the fact-finding proceeding, there was evidence presented. When did the first symptom occur? It was Lermit. It was the Lermit condition. And so that would be sufficient to start the limitations period running. I think that's the question, isn't it? You say by the time it's diagnosed. By the time it was diagnosed, the statute had run as the Secretary's position, and therefore it's too late. But I do think that this is really quite a significant point. You would require the Petitioner to bring suit before she knows she's sick. Say I had a pain in my back, and so I'm going to file suit. Well, could you imagine how far that suit would get in the Secretary's procedure? She's not injured, she's not sick, she's got a little pain. But you're saying that the suit must be filed during that period. The suit has to be filed once there is some recognizable symptom or manifestation of injury. But not recognized by the medical profession. No connection recognized by the medical profession. But I hear you saying, nonetheless, suit must be filed because the statute is running. Yes. So there are several reasons for that. First, that's the language that Congress selected. And the Petitioner, of course, because she doesn't even know she's sick. Well, Your Honor, it's not that no knowledge of injury is required. It's that no knowledge that the injury is related to a vaccine is required. Either way, that's all right. In either case, your requirement is that the suit must be filed before there's either knowledge of injury or knowledge of relationship. Yes, Your Honor. Congress designed that statute in the way, in part because in an administrative scheme like this, you have to have some rules that can be administered. So the problem with a scheme that relies on a discovery rule based on the weight of medical evidence is that, as a practical matter, it, first of all, imports a series of complicated inquiries into the threshold timeliness question. But more importantly, the weight of medical evidence is something that is not really an administrable standard. So what Congress determined is that, in situations where the limitations period may have fully run, if knowledge of a vaccine injury link emerges later, then the proper recourse is for a Petitioner to seek amendment of the vaccine injury table or to... Yes, there is, Your Honor. So why would Congress have a different rule for the beginning of the statute of limitations under the Vaccine Act than the vast majority of states have under similar circumstances? Since the states apply a discovery rule, why would Congress have a different statute of limitations triggered when it's contemplated that the state remedy is going to be available if the petition is denied? What would be the reason to have a different rule for the federal limitations period and the subsequent state limitations period? In part because this is a very different scheme from state tort analogs. So it's a scheme that contemplates that the only thing that has to happen for a petitioner to prevail is on a table claim, all the petitioner has to show, as a matter of fact, is the existence of the vaccine and the injury and the symptoms within the time in the table. So that's a very relaxed standard. As to off-table claims, the petitioner has to show causation, in fact, but only as to the petitioner's particular case, and they're only a causal mechanism that's legally plausible. You're really addressing my question. Suppose the federal statute of limitations is run because we agree with you and hold that any indication of disease is sufficient. Can the person then sue under state law because the state law applies a discovery rule, or is the person barred because that person didn't file a federal claim? As both of the parties note in their brief, that's currently an open question as a matter of law. What's your position? The government hasn't had occasion to take a position on this issue so far. So in state proceedings, certain state courts do allow petitioners to file state suits after an untimely vaccine ad petition. Other state courts have said that a timely petition is required in order to bring civil suit. It's an open legal question. But either way, don't you have a problem if the result is that you can't file the state suit if the federal claim is barred, then the federal government is effectively barring state suits that would have existed before, which didn't seem to be the purpose of the vaccine. On the other hand, if you can sue in the state courts even though the federal statute of limitations is run, the whole purpose of the Vaccine Act is defeated because you will not have to bring the federal claim first and get compensation, and the state claims won't be avoided by that mechanism. So I'm just very puzzled as to how it could be that Congress would want to have a different test for the federal limitations period than for the state limitations period. To take Your Honor's second question first, so the state limitations provisions... Under the federal statute, the running of state limitations provision is told so that if a petitioner is able to bring suit afterwards, the petitioner gets the benefit of the most generous rule. But if a state has a less generous rule or the suit happens to be in one of those states that say a timely petition is a prerequisite to bringing a suit, this is no different from any other situation where Congress enacts an administrative scheme that's designed to surface claims and provides that one has to exhaust the scheme properly before going to federal court. But I don't think you're really addressing the problem. The problem is most of the states apply a discovery rule, and if you don't apply a discovery rule with respect to the federal limitations period, the federal remedy might be denied, but the state remedy would be open. I mean, could Congress have possibly intended that? Sure, and that's something that's actually built into the Vaccine Act, that the Vaccine Act provides that if a petitioner properly proceeds through the act and is ultimately denied compensation, that petitioner has the right to elect a state suit. So Congress did contemplate there may be situations where there's a determination someone should not be compensated under the Vaccine Act, but that individual should be permitted to try his or her chances in state court. You're aware of the recent Supreme Court case interpreting that statute in a way that doesn't seem to quite conform with your explanation to us. I believe Your Honor is referring to the Brusewitz case, and there, that was construing a very particular provision of the Vaccine Act that related to preemption of certain common law causes of action against vaccine manufacturers and product liability actions. So the broader question of whether an individual could have a remedy in state court if that individual doesn't have a remedy under the Vaccine Act is one that Congress has spoken to directly, and Congress has said that, yes, that can happen, and that's absolutely fine. One of the arguments that's made about the way that the limitations period should be construed is that construing it broadly would interfere with the table mechanism. What is the standard for putting... for the secretaries putting a new disease on the table? What is required for the secretary to find in order to put it on the table? MS, for example. Right, so the secretary adds new vaccines... Yes. ...when they're recommended for... And also new diseases. Exactly. So a new disease, the addition is based on scientific evidence. So, for example, either... Yeah, but what standard? I mean, I went through the statute and the regulations, and there was a lot about the secretary should consider the evidence and so forth and so on, but I couldn't find anything that said, here's the standard to apply. It's not in the statute, Your Honor, but... What is the standard? So the secretary... And this has been explained in federal register publications that accompany the addition of a new injury vaccine. OK. So that what the secretary does is it looks to scientific evidence such as, for example, Institute of Medicine reports or findings that are generated through the Vaccine Adverse Event Reporting System. So to take the example of rotavirus, that was a situation in which, through the Vaccine Adverse Event Reporting System, a number of incidents of bowel collapse were reported. And the secretary examined this epidemiological data that showed a strong statistical association between the vaccine and this injury, and on that basis added it to the table. So applying what standard? So evaluating the scientific evidence. Yes, but, I mean, there's got to be a standard, a test. Consensus among the medical community, more likely than not? That there is actual causation, it's more likely than not. It's clear indication of cause, or what? Well, to take as an example the 1994 Institute of Medicine report that kind of lays out the different axes on which these conditions are... ..these sort of causation is explored, the scientific evidence analysis looks to things like biological plausibility, case reports, case series, and uncontrolled observational studies, and then... But that doesn't answer the question. The question is, does it require a medical consensus or simply some objective recognition, or more likely than not? What is the standard? So the standard would have to be something less than medical consensus, because in this setting, very often, medical consensus itself is an uncertain thing. Where would we find some indication of where the standard is? I don't believe it's laid out in the statute or regulations, but it's explained when the secretary either adds something to the table or chooses not to add something to the table. The statute provides... Can I refer you to the statutory language that defines vaccine-related injury? There's actually a statutory definition, and in that definition, it refers to something that is associated with. Synonyms of that would be correlated with, associated with. It doesn't obviously require definitive determination, but so who makes that determination? How do we know something is associated with a vaccine or correlated with a vaccine? How do we even have vaccine-related injury in the first instance? At what point does that association have to exist? Well, so for purposes of the statute, the association contemplated at different stages. So at the initial stage, it would be the injury that the petitioner alleges or pleads or has reason to believe is associated with the vaccine. Then at the fact-finding stage, the question becomes cause in fact. But who associates? You're saying that the petitioner just does the association or is associated with the vaccine? Doesn't that imply that some medical determination exists to associate, to have an association between the vaccine and the injury? It contemplates that they have to be associated, that someone can't bring a claim for an injury that has no relationship at all to a vaccine. But the association, at least at the beginning when the claim is brought, doesn't have to be something that's based on medical causation, because that's what the ultimate merits question is. The ultimate merits question is,  in this particular petitioner's case? So is association just an allegation? Well, association captures the fact that this has to be something that is linked with a vaccine. So in the beginning, the petitioner, yes, does allege the connection and has to have a good faith reason to believe that. Well, how could you make such an allegation if there was no reason to believe that there was a connection? Well, Your Honor, for example, in this case, as in the Worderich case, which was the Hep B paradigm case that was recently resolved with an award of compensation to the petitioner. So in both of those cases, we have petitioners who received a vaccine within one month, had an unmistakable symptom of injury, received within the year the diagnosis of a nonspecific... To bring a petition, there has to be evidence of causation. How can somebody have evidence of causation if there's no reason to believe there's a connection? Well, Your Honor, not evidence, but a good faith reason to believe, and Congress built that into the statute by giving... Why would you have a good faith reason to believe if nobody thought there was a connection? Well, Congress built that into the statute by giving individuals 36 months to determine whether or not they would have a claim. But the fact that a statute of limitations might start running before a petitioner has complete knowledge or proof of all elements of a claim, that's the way that many statutes of limitations function, including the medical malpractice discovery rule, because that rule operates in a setting where, although it contemplates that one has to know both about the injury and the cause, the elements of the case include negligence. But an individual doesn't have to know about that negligence for the statute of limitations to start running. But at that point, wouldn't the solution be an equitable tolling of the statute of limitations? Because you don't have all of the facts available at that particular juncture. No, Your Honor, and that goes to one of the major problems with Petitioner's argument, which is that if equitable tolling isn't... If this medical malpractice discovery rule isn't available as a matter of statutory construction, equitable tolling isn't a way to backdoor it into the statute, because the Supreme Court has recognized that equitable tolling is applicable only under certain sets of circumstances, and nothing about Petitioner's case touches on any of those circumstances. Well, actually, in the Supreme Court case law, isn't there a presumption of equitable tolling in this case? Unless Congress definitively rebuts the presumption, which it has in this case, by specifically enacting express exceptions to the general limitations rule. What exceptions are those? So, there are two. Or off-table individuals. There's the exception that this court recognized in Bryce. So, for a claim that's improperly filed in state or federal court, that individual may still be allowed to file a timely Vaccine Act petition more than 36 months after the first symptom or manifestation, as long as the Vaccine Act petition is filed within one year of the dismissal of the improperly filed claim. So, that's one exception. And the second exception is the claim revival provision with the eight-year look-back period. There, the reason why it functions as an exception is that there is overlap between the individuals who would fall in that claim revival provision and the individuals to whom the 36-month limitation period would apply. So, the way that works is there could be an individual who, in the 36-month period, has no reason to know that he or she has a claim. The full limitations period runs. Subsequently, some recognition emerges of a vaccine injury link. The table is amended. And claims from the previous eight years are revived and petitioners have an additional two years. Isn't the Vaccine Act... Mr. Skupta, we'll hear Judge Rayna's question and then Judge Lynn's question, and we'll be done at that point. Thank you, Your Honor. Isn't the Vaccine Act remedial in nature? And if so, how does that affect how this Court would construe the various provisions that we're talking about? So, the remedial nature of the Vaccine Act is something that might feature as a background atmospheric, but it doesn't affect how the Court would apply plain language of Congress or how the Court needs to... Assuming we're looking at some conflict within the language, how would we construe those conflicts in view of the act being remedial in nature? So, in this case, there's, on the one hand, the fact that the act is remedial in nature, and then, on the other hand, the fact that the act authorizes claims against the United States. So, this Court has said that, to the extent that the Vaccine Act is a waiver of sovereign immunity, its terms need to be construed narrowly. So, there are kind of those considerations on both sides. Could you move to Judge Lynn's question now? Judge Rayna addressed the issue, so I'm... Thank you, Mr. Skupta. And, Mr. Fishman, you have, as I recall, just about eight minutes remaining. Thank you, Your Honor. I'm going to try to start back at the beginning and walk through, I think, the three main themes. First, Judge Bryson and Newman, I want to make clear the concerns that you were discussing about the sore shoulder. Nobody would know that that was a symptom of MS. It's not hypothetical. It's the facts of our case. Well, you had a Lermont sign within a month of the last injection, I think. The undisputed evidence from Dr. Meyer, specialist in neurology, expert in neurology, specialty in MS, said, in hindsight, 1996 or 97, I can see that as MS, but not the full... In 2006 or... I'm sorry. Yeah. So, it goes even further than not a definitive diagnosis of the disease. Dr. Newman actually said, in hindsight, I can... I understand that the sore shoulder, that was the first indication of MS, but as a scientific matter, Dr. Kloer hadn't actually developed that disease until years later, because that's the way MS works. But let me ask you, in the dissent in Kloer, in the original opinion, which has been vacated en banc, the dissent has a statement that says, the law of the circuit is clear. The statute of limitations begins to run upon the first symptom, blah, blah, blah, where that symptom or manifestation is recognized by the medical profession as a symptom or manifestation of the injury claimed. So, at least the dissent, in our original opinion, recognized what you are saying, did it not, with respect to the relationship between the laremites and the MS. Is that the way you... Isn't that the way you read that? Yeah, sure. And that it doesn't... Right, and that it doesn't matter. I haven't gotten teachers to say anything. I mean, there can only be one first manifestation, right? I don't think so. Only one symptom. How do you get around white cotton? Well, I think the way you get around it is by saying it doesn't address the statute of limitations. It discusses the causation aspect. And so, to the extent that we're going to talk about a discovery rule or the plain language of the statute of limitations, the short answer is, white cotton doesn't say anything about that section of the statute. So you can have a first... a differing interpretation of the words first manifestation, onset, whether it's in a table or a non-table, and have differing definitions? No, our position, the plain language position, is that there's more than just the symptom component to the statute of limitations. There's the causation component itself. And if we're wrong on that, you have discovery, which is a doctrine, of course, that would apply to the statute of limitations. Not necessarily the proof required for cause and fact at the sort of merit stage. Well, white cotton doesn't address the causation requirement anyway, does it? That's correct. It doesn't deal with statute of limitations. I just want to make clear, so the one step further is it's just not the recognition that the disease was not actually developed until later. And that is what I'll characterize as the setness argument, laid out in detail in our briefs before the merits panel, before the three-judge panel. We rejected that in Markovitch. Arguably, arguably. Markovitch, arguably. And we'd have to overrule Markovitch? I think you would have to probably limit Markovitch to its facts on that score. Really, if you prevail here, we need to do something with Markovitch. You need to clean up some precedent. Absolutely. I want to address the significance of the table, how it works, what the standard is, the impact of it being updated, and I'm not being glib here. As a practical matter, the standard is it doesn't happen. It doesn't happen. It's been 15 years since an injury was added to the table. So let's talk about the Hep B vaccine. Added to the table in 1997. 2006, you have four paradigm cases in the omnibus Hep B area. Paradigm cases, what are they about? Are these viable claims for Hep B vaccines? Every one of those cases, a different illness is found to be associated with the vaccine. 2006. Five years on, 2011, go to the injury table and look to see what injuries are associated with the Hep B vaccine, and you'll find nothing, literally, because there's not a one, and there never has been. So what are the standards? I'm not really sure, but there's an awful lot of recognition in the medical community today, and even five years ago, that Hep B causes all sorts of injuries, and the secretary has not responded to any of that. It's also worth pointing out that in 1997, and I apologize, I'm going to cite the court to some authority that's not in our briefs, but this is responsive to another reply brief argument. Betty Pang, P-A-N-G, at Harvard Law did a study of the vaccine program in 2003. If you Google Betty Pang and vaccine, you'll see her report. What she says is with the exception of adding a number of vaccines to the table in 1997, the secretary has sought to narrow the injuries covered under the table and deny plaintiffs the presumption of causation. About 44.7% of the claims compensated through February 1999 were associated with table injuries the secretary removed in 1995 and 1997, resulting in it being much more difficult to recover. So the notion that the table is there to remedy these sort of problems, practical proof problems, fairness problems, equitable problems, it's an abstract argument, and I think, well, I'll say ironic, that the secretary herself is the one who says the table is the mechanism to solve this problem because the secretary never invokes that mechanism. Equitable tolling, I think it is very, very difficult, notwithstanding what Bryce said to conclude that equitable tolling should not be available in this case based on the Holland case. Holland has exceptions for cases pending in state court. Holland says that's not a problem to equitable tolling. Holland says the effective death penalty act... Your argument is that equitable tolling basically is that equitable tolling incorporates a discovery rule for all statutes and limitations, doesn't it? Well, I don't... That could be the practical result. But no, I wouldn't characterize it that way because when you start talking about equitable tolling, there's lots of considerations that may come into play. And so, for example, if the discovery comes 30 years later, a discovery rule would say you're good to go. An equitable tolling doctrine may say it's kind of unfair to the government. We think other considerations outweigh that. The threshold question on equitable tolling is whether a statute of limitations is jurisdictional. And here again, I think that implicates a lot of precedent. I think it is quite clear the secretary doesn't even take a position on it. This statute of limitations is not a jurisdictional requirement. We have a one-page footnote in our supplemental brief on this point. It is a brief in and of itself, but I encourage the court not to give it short shrift because it's in a footnote. Finally... So if it's not a jurisdictional requirement, then it can be equitably tolled. It not only can be equitably tolled, but it's also subject to waiver and estoppel. And I see that I'm out of time. We could reverse Bryce. I'm sorry? We could reverse Bryce. Absolutely. And on that score, if I might, Your Honor, Bryce is the only circuit authority It is the authority rejecting equitable tolling. In the course of doing so, on page 12, the paragraph beginning, we also note there is a statement rejecting equitable tolling saying we also note there doesn't have to be any medical recognition of a link between a symptom and a vaccine. That is the statement that the panel dissent relies upon for rejecting our position. And I just want to point out the as we note paragraph in Bryce has no analysis and cites no authority. So this sort of threshold question, does there have to be an understanding of a link, is really a question that's never been, I would argue, thought through and analyzed by reference to statutes or cases. Thank you very much, Mr. Kishore. Thank you, Your Honor. The court will take a brief recess.